SCOTT+SCOTT LLP
CHRISTOPHER M. BURKE (214799)
KRISTEN M. ANDERSON (246108)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone:  619.233.4565
619.233.0508 (fax)
cburke@scott-scott.com
kanderson@scott-scott.com

ROBBINS GELLER RUDMAN &
DOWD LLP
PATRICK J. COUGHLIN (111070)
FRANK J. JANECEK, JR. (156306)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:  619.231.1058
619.231.7423 (fax)
patc@rgrdlaw.com
frankj@rgrdlaw.com

Attorneys for Soon Ja Chun,
Bernard Jung Kim and Elizabeth Bahn

BECK & LEE BUSINESS TRIAL
  LAWYERS
ELIZABETH LEE BECK (233742)
JARED H. BECK (233743)
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone:  305.789.0072
786.664.3334 (fax)
elizabeth@beckandlee.com
jared@beckandlee.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE KOREAN AIR LINES CO., LTD. ANTITRUST LITIGATION | MDL No. 1891<br>No. CV 07-06542 SJO (AGRx) |
| This Document Relates To:<br><br>Indirect Purchaser Actions | **MEMORANDUM IN OPPOSITION TO KOREAN AIR LINES CO. LTD.'S MOTION TO DISMISS THIRD AMENDED INDIRECT PURCHASER CLASS ACTION COMPLAINT**<br><br>Date:   January 9, 2012<br>Time:  10:00 a.m.<br>Courtroom: 1 – 2nd Floor<br>Hon. S. James Otero |

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    LEGAL STANDARD ................................................................................. 2

III.   IP PLAINTIFFS PLAUSIBLY ALLEGE STANDING TO BRING A CLAIM FOR DAMAGES UNDER SECTION 4 OF THE CLAYTON ACT ......................................................................................................... 3

       A.    This Court Has Twice Ruled that Indirect Purchaser Damage Claims Have Merit ............................................................................ 3

       B.    *Illinois Brick* Is Not an Absolute Bar Against Indirect Purchaser Damages Claims ..................................................................... 5

       C.    IP Plaintiffs' Allegations of Standing Are Not Contradictory ............. 7

       D.    IP Plaintiffs' Allegations of Standing Are Not Conclusory ................ 9

             1.    IP Plaintiffs' Plausibly Allege the Ownership/Control Exception ................................................................................ 10

             2.    IP Plaintiffs' Plausibly Allege the Cost-Plus Exception .......... 12

       E.    The *Illinois Brick* Concerns Are Not Present ..................................... 13

IV.    IP PLAINTIFFS PLAUSIBLY ALLEGE STANDING TO BRING A CLAIM FOR INJUNCTIVE RELIEF UNDER SECTION 16 OF THE CLAYTON ACT ....................................................................................... 13

V.     CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arizona v. Shamrock Foods Co.*,
   729 F.2d 1208 (9th Cir. 1984)........................................................6, 7

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................3

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................2, 3

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.*,
   141 F.R.D. 144 (N.D. Cal. 1991) ...........................................9, 10, 12

*City of Moundridge, KS v. Exxon Mobil Corp.*,
   471 F. Supp. 2d 20 (D.D.C. 2007) .....................................................9, 10

*Coalition for ICANN Transparency, Inc. v.VeriSign, Inc.*,
   611 F.3d 495 (9th Cir. 2009) ................................................................3

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2008) ...........................................................10

*Diskin v. Daily Racing Form, Inc.*
   No. 92 Civ. 6347, 1994 WL 330229 (S.D.N.Y. July 7, 1994)...........11

*Freeman v. San Diego Ass'n of Realtors*,
   322 F.3d 1133 (9th Cir. 2003).....................................................6, 7, 10

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
   392 U.S. 481 (1968) ...........................................................................6

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*,
   424 F.3d 363 (3d Cir. 2005) ...................................................10, 11, 15

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ..............................................................*passim*

*In re ATM Fee Antitrust Litig.*,
   No. C 04-2676, 2010 WL 3701912 (N.D. Cal. Sept. 16, 2010)........10

*In re Beef Industry Antitrust Litig.*,
   600 F.2d 1148 (5th Cir. 1979) ............................................................... 7, 13

*In re Brand Name Prescription Drugs Antitrust Litig.*,
   123 F.3d 599 (7th Cir. 1997) ............................................................... 10, 11

*In re Citric Acid Antitrust Litig.*,
   No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996)................................. 8

*In re G-Fees Antitrust Litig.*,
   584 F. Supp. 2d 26 (D.D.C. 2008) .................................................... 10

*In re Mercedes-Benz Antitrust Litig.*,
   157 F. Supp. 2d 355 (D.N.J. 2001)........................................................7, 9, 10

*In re Mushroom Direct Purchaser Antitrust Litig.*,
   06-cv-620, 2008 WL 583906 (E.D. Penn. March 3, 2008)................................. 9

*In re Nasdaq Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996)........................................................7, 8

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   269 F.R.D. 80 (D. Me. 2010) .................................................................5

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008) ..................................................................... 15

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-md-01819, 2010 WL 5071694 (N.D. Cal. 2010) ................................ 14

*In re Text Messaging Antitrust Litig.*,
   630 F.3d 622 (7th Cir. 2010) ................................................................ 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal 2010) ............................................... 14, 15

*In re Toilet Seat Antitrust Litig.*,
   No. 75-184, 1977 WL 1453 (E.D. Mich. Aug. 24, 1977) ................................ 11

*Kansas v. Utilicorp United, Inc.*
   497 U.S. 199 (1990) ..................................................................... 10

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008)............................................................ 10

*Kloth v. Microsoft Corp.*
  444 F.3d 312 (4th Cir. 2006) ..................................................................... 10, 11

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
  232 F.3d 979 (9th Cir. 2000) ............................................................................ 3

*Lucas Automotive Engineering v. Bridgestone/Firestone, Inc.*,
  140 F.3d 1228 (9th Cir. 1998) ........................................................................ 13

*Mid-West Paper Products Co. v. Continental Group, Inc.*,
  596 F.2d 573 (3d Cir. 1979) ........................................................................... 14

*Ortiz v. Fiberboard Corp.*,
  527 U.S. 815 (1999) ......................................................................................... 5

*Royal Printing Co. v. Kimberly Clark Corp.*,
  621 F.2d 323 (9th Cir. 1985) ...................................................................... 7, 10

*United States v. Borden Co.*,
  347 U.S. 514 (1954) ....................................................................................... 15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §1 ......................................................................................................... 4, 5, 6, 8
  §15 ............................................................................................................ *passim*
  §26 ............................................................................................................ *passim*

**OTHER AUTHORITIES**

RESTATEMENT (THIRD) OF AGENCY (1996) ............................................................. 9

## I.     INTRODUCTION

On August 1, 2007, the United States Department of Justice issued a Criminal Information charging Korean Air Lines Co., Ltd. ("Korean Air") with conspiring to fix prices on passenger flights between the United States and Korea between January 2000 and July 16, 2006.  Third Amended Indirect Purchaser Class Action Complaint ("TAC"), ECF No. 104, ¶33.  On August 23, 2007, Korean Air pleaded guilty to these charges and paid a criminal fine of $300 million.  *Id.*, ¶36.  Korean Air's co-conspirator, Asiana Airlines ("Asiana") pleaded guilty to identical charges on May 5, 2009.  *Id.*, ¶38.  In their guilty pleas, Korean Air and Asiana admitted to participating in the conspiracy to eliminate competition between them for H class wholesale fares and passenger airfares, as alleged in the TAC.  *Id.*, ¶42.  Korean Air's and Asiana's H class wholesale fare sales alone generated revenues to the airlines of at least $224.8 million.  *Id.*, ¶30.  Notably, Korean Air's motion to dismiss the TAC does not defend against the claims of the Indirect Purchaser Plaintiffs ("IP Plaintiffs") on the grounds that the conspiracy did not exist, or that it was not plausibly alleged.

Instead, Korean Air challenges IP Plaintiffs' standing, under §4 of the Clayton Act, 15 U.S.C. §15, to recover damages they sustained as a result of Korean Air's participation in the conspiracy to fix prices.  Korean Air also challenges IP Plaintiffs' standing to pursue injunctive relief, under §16 of the Clayton Act, 15 U.S.C. §26, to prevent Korean Air from inflicting further harm.  Korean Air makes these challenges to IP Plaintiffs' standing despite the Court's approval of IP Plaintiffs' standing to participate in a settlement with Asiana, and the Court's subsequent dismissal of IP Plaintiffs' claims against Asiana as a result of the settlement.  The argument is nonsensical: IP Plaintiffs cannot, on the one hand, have standing to participate in the Asiana settlement and, on the other hand, lack standing to pursue those same claims against Korean Air.

IP Plaintiffs have standing to pursue their claim for damages against Korean Air, pursuant to plausible allegations of the ownership/control and cost-plus

exceptions articulated by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  These allegations are neither "conclusory" nor "internally inconsistent," as Korean Air contends.  The argument that the allegations are conclusory requires the Court to apply heightened fact-pleading standards to allegations of antitrust standing.  But the Court already declined to do this when it denied the motions to dismiss aimed at the Direct Purchaser Plaintiffs' ("DP Plaintiffs") complaint in 2008.  Korean Air has pointed to no case requiring the Court to reconsider its prior holding.  The Court should also reject Korean Air's argument that the TAC's allegations of the *Illinois Brick* exceptions are inconsistent and should therefore be disregarded.  The TAC alleges IP Plaintiffs' purchases, and the purchases of the proposed class they seek to represent, were made from travel agents owned or controlled by Korean Air, or by IP Plaintiffs themselves, or pursuant to cost-plus contracts.  IP Plaintiffs' allegations are not contradictory; rather, they properly describe a variety of modes of purchase within the proposed damages class.

Finally, IP Plaintiffs have standing to pursue injunctive relief under §16 of the Clayton Act.  It is well-established that *Illinois Brick* does not bar claims by indirect purchasers for injunctive relief.  To support this claim, IP Plaintiffs plead facts giving rise to the realistic possibility of repeat conduct by Korean Air.  Thus, the TAC plausibly alleges "threatened harm or damage," as required by §16.

Korean Air's motion should be denied in its entirety.

## II.  LEGAL STANDARD

In *Bell Atlantic Corp. v. Twombly*, the Supreme Court reaffirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  550 U.S. 544, 555

(2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).[1]
Thus, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
detailed factual allegations," though plaintiffs' obligation to state the grounds of
entitlement to relief "requires more than labels and conclusions, and a formulaic
recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  To
survive a motion to dismiss, a complaint "must plead 'enough facts to state a claim to
relief that is plausible on its face.'" *Coalition for ICANN Transparency, Inc. v.
VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570).
In considering whether a complaint is sufficient to state a claim, the allegations are to
be viewed as a whole; they are not to be dismembered and examined in isolation.
*Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 990-91 (9th Cir. 2000) (citing
*Continental Ore v. Union Carbide & Carbon Co.*, 370 U.S. 690, 699 (1962)).  Further,
on a Rule 12(b)(6) motion, the court will accept all material allegations as true and
construe them in the light most favorable to the plaintiff.  No. 2:07-cv-5107 ("DP
Action"),[2] Order Granting in Part and Denying in Part Defendants' Motions to
Dismiss, ECF No. 155 at 13 (June 25, 2008); *Coalition for ICANN*, 611 F.3d at 501.

## III. IP PLAINTIFFS PLAUSIBLY ALLEGE STANDING TO BRING A CLAIM FOR DAMAGES UNDER SECTION 4 OF THE CLAYTON ACT

### A. This Court Has Twice Ruled that Indirect Purchaser Damage Claims Have Merit

Korean Air alleges that IP Plaintiffs lack standing to bring this suit under §4 of
the Clayton Act, citing *Illinois Brick*, 431 U.S. at 744 (barring indirect purchasers

---

[1]     Unless otherwise noted, all citations are omitted and emphasis is added.

[2]     All "direct purchaser actions" were consolidated under Case No. 07-5107; this action, the "indirect purchaser action," has proceeded under a separate but coordinated docket, Case No. 07-6542.  Unless otherwise noted, all referenced ECF numbers are for Case No. 07-6542, the case number under which IP Plaintiffs' action has proceeded.

from bringing antitrust damages claims under §4, subject to exceptions).[3]  This Court has twice rejected Korean Air's standing argument.

The first time the Court rejected Korean Air's argument was in its Order granting in part and denying in part defendants' motions to dismiss the DP Plaintiffs' Second Amended Consolidated Class Action Complaint.  DP Action, ECF No. 155 at 4.  The DP Plaintiffs purport to represent all claims that can be asserted under §1 of the Sherman Act, including claims held by indirect purchasers.  *E.g.*, DP Action, Second Amended Class Action Complaint, ECF No. 57, ¶47.  At the hearing on Defendants' Motion to Dismiss the DP Plaintiffs' Complaint, counsel for the DP Plaintiffs confirmed that the DP Plaintiffs' class definition "include[s] persons who qualify as direct purchasers under *Illinois Brick* or who would be deemed to be falling within an exception under *Illinois Brick* so that they have a claim as a direct purchaser under the Sherman Act."  DP Action, Transcript, ECF No. 150, at 14:11-19.  Korean Air moved to dismiss the Direct Purchasers' damages claim on the grounds that the class definition includes indirect purchasers who do not have standing under §4.  DP Action, ECF No. 155 at 4, n.7.  The Court rejected this argument, holding that "Plaintiffs need not detail the specifics of their respective purchases at this time," and that "[t]he Court will address the class definition at the class certification stage."  *Id.* at 4 & 4, n.7.

The Court also impliedly rejected Korean Air's argument that indirect purchasers lack standing under §4 of the Clayton Act a second time when the Court approved the class settlement with Asiana Air.  The settlement class certified by the Court includes direct ***and*** indirect purchasers, and released IP Plaintiffs' claims

---

[3]      Korean Air challenges IP Plaintiffs' statutory standing under §4 and §16 and does not argue lack of Article III standing.  Def. Br. at 7.  Accordingly, IP Plaintiffs agree with Korean Air's footnote 5 that Rule 12(b)(6) standards should apply.  *See id.* at 7-8, n.5.

against Asiana.  *See* DP Action, ECF Nos. 505, 507.[4]  The inclusion of IP Plaintiffs' claims in the settlement class suggests that their claims have merit.  Otherwise, approval of relief to indirect purchasers would not have been appropriate.   In certifying the class under Rule 23(e), the Court was required to ensure that the class certification prerequisites of Rule 23(a) and (b) were met.  *Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 858 (1999).  Rule 23(a)(2) requires that "there are questions of law or fact common to the class," which presupposes each class member has a cause of action.  *Cf. In re New Motor Vehicles Canadian Export Antitrust Litig.*, 269 F.R.D. 80 (D. Me. 2010) (certifying Rule 23(b)(3) damages class when indirect purchaser's damages claim under §4 of the Clayton Act had been dismissed but were subject to the right of appeal).  If indirect purchasers lacked standing under §4 of the Clayton Act, their inclusion in the settlement class would not have been appropriate.

## B.  *Illinois Brick* Is Not an Absolute Bar Against Indirect Purchaser Damages Claims

In *Illinois Brick*, the State of Illinois and 700 localities brought antitrust damages claims against concrete block manufacturers for price-fixing in violation of

---

[4]   The Court certified the following settlement class:

> All persons and entities (excluding governmental entities, defendants, and defendants' respective predecessors, subsidiaries, and affiliates) who purchased Passenger Air Transportation on the airlines of defendants, or any predecessor, subsidiary, or affiliate of the defendants, at any time during the time period January 1, 2000 through August 1, 2007.  As used in the foregoing definition, "affiliates" means entities controlling, controlled by, or under common control with a defendant.  The term "affiliates" does not include any travel agents.  The term "Passenger Air Transportation" means passenger air transportation services for flights originating in the United States and ending in Korea or flights originating in Korea and ending in the United States, purchased in the United States.  Pursuant to Paragraph 28 of the Agreement and the Order of the Court, dated August 2, 2010, claims based on Passenger Air Transportation purchased in Korea are not included in the Class.  The Class only includes those persons and entities who may assert a claim for damages for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

DP Action, ECF No. 507 at 2-3.

1   §1 of the Sherman Act.  431 U.S. at 726.  The defendants manufactured concrete

2   blocks and sold them to masonry contractors, who submitted bids to general

3   contractors for work on masonry portions of construction projects.  *Id.*  The general

4   contractors submitted bids for these projects to plaintiffs.  *Id*.  Plaintiffs sought "to

5   demonstrate that masonry contractors, who incorporated [the] block into walls and

6   other masonry structures, passed on the alleged overcharge on the block to general

7   contractors, who incorporated the masonry structures into entire buildings, and that

8   the general contractors in turn passed on the overcharge to [plaintiffs] in the bids

9   submitted for those buildings."  431 U.S. at 735.

10          The Supreme Court held that, in general, only a direct purchaser is "injured in

11  his business or property" within the meaning of §4 of the Clayton Act.  *Id.* at 729.

12  This holding was compelled by the Court's prior decision in *Hanover Shoe, Inc. v.*

13  *United Shoe Mach. Corp.*, 392 U.S. 481 (1968), where the Court held that antitrust

14  defendants could not argue as a defense that a plaintiff who had purchased a product

15  directly from defendants did not have standing under §4 of the Clayton Act because it

16  passed on the overcharge to its customers.  392 U.S. at 494.  In *Illinois Brick*, the

17  Court applied the rule symmetrically to the offensive use of the pass-on theory by

18  plaintiffs.  431 U.S. at 729, 735.

19          *Illinois Brick* itself noted two exceptions to its "indirect purchaser" doctrine,

20  however:  (1) where the direct purchaser is owned or controlled by the indirect

21  purchaser or the defendant and (2) where the indirect purchaser obtained the product

22  from the direct purchaser under a "cost-plus" contract.[5]  431 U.S. at 726, n.2, 735,

23  n.16; *see also Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1213, n.2 (9th Cir.

24

25

_____

26  [5]     Nor does *Illinois Brick* bar indirect purchasers from obtaining, pursuant to §16
    of the Clayton Act, equitable relief, *Freeman*, 322 F.3d at 1145, which is one of the
27  remedies that IP Plaintiffs seek in the TAC, as discussed below.

28

1   1984) (recognizing ownership/control and cost-plus exceptions).[6]   Under these

2   circumstances, indirect purchasers have standing to bring damages claims under §4.[7]

3   As the next sections demonstrate, IP Plaintiffs have standing under these exceptions.

4   **C.   IP Plaintiffs' Allegations of Standing Are Not Contradictory**

5         The TAC alleges that IP Plaintiffs' purchases, and the purchases of the

6   proposed class they seek to represent, were made from travel agents owned or

7   controlled by Korean Air, or controlled by IP Plaintiffs themselves, or pursuant to

8   cost-plus contracts.  IP Plaintiffs allege they purchased tickets for air travel using a

9   travel agent controlled by them.  TAC, ¶¶61-63.  The TAC also alleges other class

10  members purchased tickets through entities owned or controlled by Korean Air or

11  pursuant to cost-plus contracts.  *Id.*, ¶87.

12        Korean Air urges the Court to disregard these allegations as "contradictory."

13  Def. Br. at 15.  IP Plaintiffs' allegations are not contradictory; rather, they properly

14  bring a variety of modes of purchase within the proposed damages class.  *See, e.g.*, *In

15  re Nasdaq Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 505 (S.D.N.Y. 1996)

16  (certifying class that included indirect purchasers who purchased securities through

17  brokers owned by defendants and brokers controlled by plaintiffs); *In re Mercedes-

18  Benz Antitrust Litig.*, 157 F. Supp. 2d 355, 366-67 (D.N.J. 2001) (denying Rule

19  12(b)(6) motion when complaint alleged intermediary either controlled by defendant

20  _____

21  [6]       The Ninth Circuit also recognizes a "co-conspirator exception" to *Illinois

22  Brick*.  *Shamrock Foods*, 729 F.2d at 1211.

23  [7]       *E.g.*, *In re Beef Industry Antitrust Litig.*, 600 F.2d 1148, 1165 (5th Cir. 1979)
     (indirect sellers' damage claim allowed under cost-plus exception when defendants

24  conspired to fix prices paid to middlemen who passed on low price to plaintiffs);
     *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1985)

25  (indirect purchaser's damage claim allowed under ownership/control exception when
     direct purchasers were a division (Crown Zellerbach) and a subsidiary (Butler Paper

26  Co.) of defendants (Crown Zellerbach, Great Northern Nekoosa)); *Freeman v. San
     Diego Ass'n of Realtors*, 322 F.3d 1133, 1146 (9th Cir. 2003) (indirect purchasers'

27  damage claim allowed under ownership/control exception when direct purchaser
     (Sandicor) owned by defendants (real estate associations)).

28

1   or indirect purchaser); *see also In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996

2   WL 655791, at *5 (N.D. Cal. Oct. 2, 1996) (certifying class that included a "variety

3   among plaintiffs with regard to frequency, continuity, recency, and mode of purchase .

4   . . [and] similar diversity among members of the class").

5       In *Nasdaq*, the court certified a damages class defined to include class members

6   who purchased securities indirectly from defendants through (1) brokers owned by

7   defendants and (2) brokers owned by non-defendants (*i.e.*, brokers controlled by

8   plaintiffs). 169 F.R.D. at 506.  Plaintiff-investors alleged the leading Nasdaq market-

9   makers engaged in a conspiracy to restrain trade in violation of §1 of the Sherman Act

10  by collectively refusing to quote odd-eighths (*e.g.*, 1/8, 3/8, 5/8, and 7/8 of a dollar) in

11  their quoted prices for securities.  *Id.* at 501-02.  This refusal widened the "spread"

12  between the purchase and sale price of securities, from which the defendants derived

13  their profits, to even eighths.  *Id.*  The *Nasdaq* court did not view as "contradictory"

14  the inclusion in the damages class of investors who purchased from brokers owned by

15  defendants and investors who purchased from brokers they controlled.  Rather, the

16  court held that investors who traded through both types of broker-agents had standing

17  under *Illinois Brick*:  "the class will be defined to include investors who transacted

18  through non-[d]efendant owned brokers where those brokers did not function as a

19  distinct economic entity in the chain of purchase or sale."  *Id*. at 506.  The court also

20  included in the class investors who transacted through defendant-owned brokers,

21  noting that "[d]efendants conceded that investors who purchased securities through

22  brokers who are commonly-owned affiliates of [d]efendants have standing under

23  *Illinois Brick*" under the ownership/control exception.  *Id.* at 505, n.11.

24      Nor are the TAC's allegations of indirect purchases under the ownership/control

25  exception and the cost-plus exception contradictory.  Indeed, in approving the class

26  settlement with Asiana, this Court certified a settlement class that included indirect

27  purchasers under **both** exceptions.  The settlement class includes all persons and

28  entities – direct or indirect – who may assert a damages claim under §1 of the

Sherman Act.  *See* DP Action, ECF Nos. 505, 507.  This would include indirect purchasers pursuant to both the ownership/control and cost-plus exceptions.  *See also In re Mushroom Direct Purchaser Antitrust Litig.*, 06-cv-620, 2008 WL 583906, at *3 & n.1 (E.D. Penn. March 3, 2008) (denying Rule 12(b)(6) motion where plaintiff alleged both the ownership/control and cost-plus exceptions).

Rather than "internally contradictory," it is prudent to include in the indirect purchaser damages class ***all*** qualifying methods of purchase to maximize potential recovery to the class, as courts have held travel agents to act as agents either for the provider of travel service (*e.g.*, airline) or for the traveler, depending on the circumstances of the transaction.  *See, generally*, RESTATEMENT (THIRD) OF AGENCY, §3.14, Reporter's Note a (1996). (collecting cases where travel agents characterized as agents of airlines and other service providers and where travel agents characterized as the traveler's agent); *see also Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 150 (N.D. Cal. 1991) (holding that travel agent lacked standing under §4 of the Clayton Act when it made purchases pursuant to cost-plus contract with indirect purchaser, and that indirect purchaser would have standing).

## D.   IP Plaintiffs' Allegations of Standing Are Not Conclusory

Korean Air also argues the TAC's allegations of standing are "conclusory" and fail to plead sufficient facts to support IP Purchasers' standing to assert a claim for damages under §4 of the Clayton Act.  Def. Br. at 13, 16.  This Court has already rejected Korean Air's attempt to impose a heightened fact-pleading standard to allegations of antitrust standing.  In denying Korean Air's motion to dismiss the DP Plaintiffs' complaint, the Court held that to plead standing under §4, "Plaintiffs need not detail the specifics of their respective purchases."  DP Action, ECF No. 155 at 4; a*ccord Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d at 367 (declining to dismiss complaint when it was unclear what role an intermediary played in a transaction); *City of Moundridge, KS v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 31 (D.D.C. 2007) (same); *Mushroom Direct Purchaser Antitrust Litig.*, 2008 WL 583906, at *3 (same).

1   Korean Air has not cited any new case demonstrating that the Court's previous ruling
2   is not still applicable.[8]

3       Moreover, the issue of whether an *Illinois Brick* exception applies is fact-
4   intensive and should be determined by discovery.  *Illinois Brick* itself involved a
5   summary judgment motion.  431 U.S. at 727.  Similarly, in *Kansas v. Utilicorp*
6   *United, Inc*., the indirect purchaser standing determination was made at summary
7   judgment. 497 U.S. 199, 205 (1990).[9]  Korean Air's premature argument is best saved
8   for later.

### 1.       IP Plaintiffs Plausibly Allege the Ownership/Control Exception

9
10      *Illinois Brick* does not bar indirect purchaser damages claims where an
11  intermediary is controlled by one or the other of the parties.  431 U.S. at 736, n.16.
12  Courts have applied the ownership/control exception outside the context of wholly
13  owned subsidiaries, interlocking corporate directorates, minority stock ownership, and
14  loan or trust agreements.  *See* Defs. Br. at 12 (citing *In re Brand Name Prescription*
15  *Drugs Antitrust Litig.*, 123 F.3d 599, 605-06 (7th Cir. 1997).  The ownership/control
16  exception also applies "where the control exists through the contractual relationship of
17  agency."  *Mercedes-Benz Antitrust Litig.*, 157 F. Supp. 2d at 367; *In re G-Fees*
18  *Antitrust Litig.*, 584 F. Supp. 2d 26, 33 (D.D.C. 2008) (same); *Exxon Mobil Corp.*, 471

---

20  [8]     Nor does the case cited by Korean Air require more detail.  In *Kloth v.*
21  *Microsoft Corp.*, the court dismissed the complaint because plaintiffs sought to be
    treated as direct purchasers when they were indirect purchasers, and they failed to
22  allege any facts supporting an *Illinois Brick* exception.  444 F.3d 312, 320-22 (4th Cir.
    2006).

23  [9]     *See also Burkhalter Travel Agency*, 141 F.R.D. at 146 (summary judgment);
24  *Freeman,* 322 F.3d at 1143 (summary judgment); *Royal Printing*, 621 F.2d at 324
    (summary judgment); *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
25  523 F.3d 1116, 1119 (9th Cir. 2008) (summary judgment); *In re ATM Fee Antitrust*
    *Litig.*, No. C 04-2676, 2010 WL 3701912, at *1 (N.D. Cal. Sept. 16, 2010) (summary
26  judgment); *Brand Name Prescription Drugs*, 123 F.3d at 604 (summary judgment);
    *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 367-68 (3d Cir.
27  2005) (summary judgment); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046 (9th
    Cir. 2008) (motion to dismiss, but only after discovery taken).

28

1   F. Supp. 2d at 31 (same); *see also In re Toilet Seat Antitrust Litig.*, No. 75-184,
2   1977 WL 1453, at *2 (E.D. Mich. Aug. 24, 1977) (certifying class represented by
3   indirect purchaser who controlled a purchasing agent who procured goods from
4   defendants).

5       IP Plaintiffs have alleged contractual agency relationships here.  TAC, ¶¶61-63,
6   87.  The only cases Korean Air cites to support its argument that IP Plaintiffs do not
7   qualify under the ownership/control exception do not address principal-agent
8   relationships.  *See Brand Name Prescription Drugs*, 123 F.3d at 605-06; *Howard*
9   *Hess*, 424 F.3d at 371-72; *Kloth*, 444 F.3d at 321-22.

10      The small body of case law addressing the determination of whether a principal
11  and an agent constitute distinct economic entities for purposes of *Illinois Brick*
12  illustrates the fact-intensive nature of the determination, and thus, why discovery is
13  appropriate.  In *Diskin v. Daily Racing Form, Inc*, the court set forth the following
14  relevant factors:

15      [1] whether the agent performs a function on behalf of his principal other
16      than securing an offer from a buyer for the principal's product; [2] the
        degree to which the agent is authorized to exercise his discretion
17      concerning the price and terms under which the principal's product is to
        be sold; and [3] finally whether use of the agent constitutes a separate
18      step in the vertical distribution of the principal's product.

19  No. 92 Civ. 6347, 1994 WL 330229, at *4 (S.D.N.Y. July 7, 1994).

20      With respect to the first factor, because there has been no discovery, there is no
21  evidence of travel agents providing additional travel-related services, or tickets only
22  for that matter.  As to the second criterion, there is no evidence with respect to the
23  agent's discretion concerning the price and terms of the ticket sales.  Finally, under
24  either theory – if the travel agents are an agent of the airline or of the traveler – the
25  travel agent is a sales or purchasing agent, and, thus, not a separate step in the
26  distribution chain.  Indeed, this was the subject of a judicial admission by Korean Air
27  before the Ninth Circuit.  Counsel arguing on behalf of both Korean Air and Asiana
28  conceded during oral argument that travel agents do ***not*** have a direct claim against

1  the air carriers for the fuel surcharge; rather, their claim would be for commissions,

2  which is not the subject of this case.  ECF No. 432-1, Transcript at 32-33.  IP

3  Plaintiffs plausibly allege standing under the ownership/control exception.

4           **2.      IP Plaintiffs' Plausibly Allege the Cost-Plus Exception**

5           An indirect purchaser may also state a claim for damages under §4 of the

6  Clayton Act when it purchased goods or services through the direct purchaser under a

7  cost-plus contract. *Illinois Brick*, 431 U.S. at 726, n.2.  IP Plaintiffs plausibly allege

8  members of the damages class purchased tickets from travel agents and/or ticket

9  consolidators pursuant to a cost-plus contract or its functional equivalent.  TAC, ¶87.

10          For example, in *Burkhalter Travel Agency*, the court held that the direct

11 purchaser travel agent lacked standing to bring a damages claim under §4 of the

12 Clayton Act because the indirect purchaser (traveler) was the party that suffered injury

13 from the alleged price-fixing overcharge, due to a cost-plus contract.  141 F.R.D. at

14 150-51.  The travel agent arranged for a vacation package for a group of Sub-Zero

15 dealers.  *Id*. at 146.  The travel agent's services included a variety of matters, one of

16 which was the purchase of 42 cases of macadamia nuts to give to the travelers when

17 they arrived at their destination.  *Id*.  The travel agent received a profit from the sale of

18 the vacation package but billed Sub-Zero separately for the cost of the macadamia

19 nuts.  *Id.* at 146, 150.   The macadamia nuts were the subject of a price-fixing

20 conspiracy.  *Id*. at 145-46.  The court granted defendants' summary judgment motion

21 because the indirect purchaser, Sub-Zero, incurred all the damage.  *Id*. at 150.

22          As in *Burkhalter Travel Agency*, the TAC alleges travel agents billed airfare

23 charges separately from commissions, fees, and other markups.  TAC, ¶87.  Further,

24 counsel on behalf of Korean Air conceded, during oral argument before the Ninth

25 Circuit, that the travel agents did not absorb the cost of the fuel surcharges because

26 Defendants imposed the fuel surcharge directly on the ticket.  ECF No. 432-1,

27 Transcript at 29-30.  IP Plaintiffs plausibly allege standing under the cost-plus

28 exception.

### E.    The *Illinois Brick* Concerns Are Not Present

The *Illinois Brick* exceptions comport with the principles underlying the *Illinois Brick* doctrine.  Those principles reflect concern over the possibility of duplicative liability, the complexity of ascertaining the amount of overcharge passed on to indirect purchasers, and the dilution of direct purchasers' incentive to sue.  *Illinois Brick*, 431 U.S. at 730-35.

None of these concerns are present here.  Both direct and indirect purchasers are parties to the action, so there is no risk that one group will later sue Korean Air.  Thus, the risk of multiple liability is not present.  Because the travel agents served as purchasing agents for their customers, or alternatively, Korean Air, *Illinois Brick*'s concerns regarding the difficulty of ascertaining the extent of an overcharge by an independent intermediary are not present.  Similarly, under the cost-plus exception, there would be no difficulty in apportioning damages between travel agents and indirect purchasers because the indirect purchasers incurred all of the damage.  Thus, IP Plaintiffs' indirect purchaser status does not bar their damages claim.

### IV.   IP PLAINTIFFS PLAUSIBLY ALLEGE STANDING TO BRING A CLAIM FOR INJUNCTIVE RELIEF UNDER SECTION 16 OF THE CLAYTON ACT

Aside from seeking damages, IP Plaintiffs request the Court to enjoin Korean Air from continuing to illegally fix prices.  TAC, ¶¶76-81.  This request is based on §16 of the Clayton Act, which states, in part, "Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws . . . ."  15 U.S.C. §26.

*Illinois Brick* did not bar indirect purchasers from bringing antitrust claims for injunctive relief under §16 of the Clayton Act.  *Freeman*, 322 F.3d at 1145; *Lucas Automotive Engineering v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998).  This is because suits for injunctive relief by indirect purchasers in price-fixing actions do not implicate the policy considerations underlying *Illinois Brick*.  *In re Beef*

1  *Antitrust Litig.*, MDL. Docket No. 428, 600 F.2d 1148, 1167 (5th Cir. 1979); *Mid-*

2  *West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573, 590 (3d Cir.

3  1979).   A claim for injunctive relief does not expose defendants to duplicative

4  liability.   *Id.*   Further, the trier of fact is not required to calculate or apportion the

5  amount of the overcharge for an injunctive relief claim.   *Id.*

6      Korean Air asserts that IP Plaintiffs fail to state a claim for relief under §16

7  because the demand for injunction is based "solely upon past harm [IP Plaintiffs] have

8  suffered."  Def. Br. at 20.  Korean Air misreads the allegations.  IP Plaintiffs allege

9  "threatened loss or damage," as required by §16.  The TAC alleges facts showing a

10  realistic possibility of Korean Air repeating its collusive conduct.  *See, e.g.*, *In re*

11  *Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819, 2010 WL

12  5071694, at *15 (N.D. Cal. 2010) (holding "threatened injury" requirement of §16

13  established when (1) defendants had history of prior violations, (2) the market was

14  concentrated, (3) barriers to entry were high, and (4) defendants maintained close

15  relationships); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 595-96

16  (N.D. Cal 2010).

17      First, IP Plaintiffs allege that Korean Air is an admitted price-fixer and has

18  engaged in other violations in the past.  TAC, ¶¶34, 36-37, 42 (pleading guilty to price

19  fixing passenger air tickets), ¶44 (pleading guilty to price-fixing on air cargo), and ¶50

20  (prior instances of anticompetitive conduct).  Second, the market for flights between

21  the United States and Korea remains highly concentrated and dominated by Korean

22  Air and Asiana.  *Id.*, ¶51 (90% market share).  Substantial barriers to entry into the

23  market exist.  *Id.*, ¶55.  Further, demand for flights between the United States and

24  Korea remains inelastic.  *Id.*, ¶53.  Finally, Korean Air and Asiana are both members

25  of the Association of Asia Pacific Airlines ("AAPA"), whose stated purpose is to

26  "foster close cooperation" and "enhance the role of major airlines . . . for international

27  cooperation and growth."  *Id*., ¶49.  Korean Air's participation in AAPA included

28  exchanging information with Asiana about pricing, costs, and market conditions.  *Id.*

1   In their plea agreements, Korean Air and Asiana admitted to engaging in discussions

2   and attending meetings to plan the conspiracy. *Id.*, ¶42. Courts have recognized that

3   these market characteristics, also called "plus factors," make a market susceptible to

4   collusion directed at pricing. *See In re Text Messaging Antitrust Litig*., 630 F.3d 622,

5   628 (7th Cir. 2010).

6        Korean Air relies on *In re New Motor Vehicles Canadian Export Antitrust*

7   *Litig*., 522 F.3d 6, 14 (1st Cir. 2008), but that case is distinguishable. There, plaintiffs

8   failed to satisfy §16's requirement of threatened harm because plaintiffs' own expert

9   submitted an affidavit indicating that market conditions had already eliminated the

10  threat of injury. *Id*. at 15-16. Here, market conditions remain ripe for collusion.

11       Furthermore, the government's injunction does not negate the threat of injury to

12  IP Plaintiffs. Plaintiffs are not required to "establish a need for an injunction that [is]

13  'non-duplicative' . . . as *United States v. Borden Co*., 347 U.S. 514, 519 (1954) makes

14  clear that private and public injunctions may exist concomitantly." *Howard Hess*, 602

15  F.3d at 249.

16  **V.   CONCLUSION**

17       For the foregoing reasons, Korean Air's Rule 12(b)(6) motion should be denied.

18  DATED: November 28, 2011          Respectfully submitted,

19                                    SCOTT+SCOTT LLP

20                                     /s/ Christopher M. Burke

21                                    CHRISTOPHER M. BURKE
                                      KRISTEN M. ANDERSON

22                                    707 Broadway, Suite 1000
                                      San Diego, CA 92101

23                                    Telephone: 619.233.4565
                                      619.233.0508 (fax)

24                                    cburke@scott-scott.com
                                      kanderson@scott-scott.com

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN &
  DOWD LLP
PATRICK J. COUGHLIN (111070)
FRANK J. JANECEK, JR. (156306)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619.231.1058
619.231.7423 (fax)
patc@rgrdlaw.com
frankj@rgrdlaw.com

BECK & LEE BUSINESS TRIAL
  LAWYERS
ELIZABETH LEE BECK (233742)
JARED H. BECK (233743)
28 West Flagler Street, Suite 555
Miami, FL 33130
Telephone: 305.789.0072
786.664.3334 (fax)
elizabeth@beckandlee.com
jared@beckandlee.com

*Attorneys for Soon Ja Chun, Bernard Jung Kim and Elizabeth Bahn*

CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 28, 2011.

  /s/ Christopher M. Burke
CHRISTOPHER M. BURKE
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619.233.4565
619.233.0508 (fax)
E-mail:  cburke@scott-scott.com